**62 P.(2d) 812**

**WARDER et al. v. SHUFELDT.**

**No. 4116.**

Supreme Court of New Mexico.

June 22, 1936.

Rehearing Denied Dec. 7, 1936.

J. R. Modrall and Waldo Spiess, both of Las Vegas, and J. O. Seth, of Santa Fé, for appellant.

A. T. Rogers, Jr., of Las Vegas, for appellees.

BRICE, Justice.

From a judgment and sentence in a proceeding for civil contempt, the appellant has prosecuted this appeal.

The appellant is the owner of certain lands to which are appurtenant water rights out of the flow of the Mora river. The water is diverted into a ditch capable of carrying the normal flow of the river, by an improvised dam constructed of brush, logs, and mud built across the river

some distance above appellant's property, and then conducted through a ditch to a mill operated by appellant by water power. At the mill is a sluice gate through which the water from the ditch can be returned to the bed of the river; but the ditch extends beyond the mill to appellant's irrigated lands and certain storage lakes. The appellees are the owners of lands with water rights appurtenant, with the source of water supply from the same stream, but taken out lower down. Should all the water from the river be diverted at appellant's dam, appellees would be deprived of the use of water to which they are legally entitled, with the result that their crops would be seriously injured or destroyed.

On April 9, 1934, this suit was instituted in the district court by appellees, the principal object of which was to have determined and fixed the respective rights of the parties to the use of the waters of the Mora river, but incidentally to enjoin the appellant from diverting more than his proper share. It was alleged in the complaint, among other things, that the appellant was diverting more water from the Mora river than he was entitled to use, by reason of which appellees had been deprived of the use of water to irrigate their crops to their serious injury. The court, evidently feeling that the situation was serious, ordered the issuance of a temporary injunction, requiring the appellant to let the full flow of the river pass his diverting dam for a period of 10 days, and to that end either make openings in the dam, or otherwise alter it, so the entire flow of the river would pass down the channel for appellees' use; and further provided: " * * * And that after said ten (10) day period and until the further order of the court in this cause, that said Defendants shall not divert more than one-half of the flow of the water in the said Mora River, by means of said La Cueva Irrigation System or otherwise, and that the water so permitted to pass down said river shall be permitted to pass down in the bed of said stream at the location of said diverting dam and not be diverted and released in the sluice gate at the so-called Old Mill on said property."

A hearing was set for the 27th day of April, 1934, at which time the defendants in the proceeding (there being another besides appellant) were ordered to show cause, if any they had, why the injunction should not be continued in full force and effect until the final hearing and determination of the cause. Process was duly issued and served, but subsequent to such service and prior to the date set for the hearing, the parties agreed among themselves that appellant could take sufficient water through his ditch for domestic use. This was contrary to the provisions of the temporary injunction, in that the dam could not be lowered for the water to flow down the river, and at the same time divert water through appellant's ditch for domestic use. The parties also, on the 19th day of April, 1934, agreed among themselves for a modification of the injunction, and to that end a written stipulation was pre-

pared by appellant's counsel and a copy delivered to counsel for appellee, the provisions of which were not satisfactory to the latter; but in the meantime and before the proposed stipulation had been delivered to appellees' counsel, he telephoned the district judge that a stipulation had been made and authorized an order to ·be filed, modifying the injunction. Thereupon the court, believing the stipulation was on file, entered an order in which it was stated that such stipulation had been filed, and ordered: "* * * That the hearing in said cause be continued subject to a setting of said date of hearing upon written notice served upon the attorney of the opposing parties by either party wishing to set the said cause for hearing, and it is further ordered and decreed by the court that the irrigation waters involved may be administered in accordance with the temporary agreement of said parties pending a hearing and further order of this court."

Thereafter, the terms of the injunction were violated by appellant, and this proceeding was instituted by the filing of a petition in the case charging such a violation of the injunction and praying for a rule requiring appellant and another to show cause why they should not be adjudged in contempt of court and punished accordingly. Such order was entered on the 19th day of June, 1934; to which rule an answer was duly filed, in effect denying any violation of the injunction; with other defenses unnecessary to mention here. While the proceedings were at this state the court, at the request of the parties,

entered an order continuing the proceedings until the 21st day of August, 1934, and further provided in the order:

"It is further ordered by the court, That in the event that the court' should decide that the original Injunction, issued on April 9, 1934, was not amended or modified by the Stipulation of the parties made April 19, 1934, but continued in full force and effect, the court does now, upon agreement of the parties, amend or modify said Injunction of April 9, 1934, as follows:

"That from and after said 19th day of July, 1934, said Defendants shall permit one-half of the normal flow of the Mora River, including so much of the flood waters as may be utilized, and in the quantity heretofore utilized by the water users below Defendants' point of diversion, to pass down into the bed of said Mora River out of the sluice gate in the canal of P. W. Shufeldt located at a point near what is known as the Old Mill, running thence into the Mora River near the location of the bridge crossing said river at La Cueva,. and that said Defendants shall not be required, during said time, to open the diversion dam of said P. W. Shufeldt in the Mora River,—provided, however, that the said Defendants shall not allow any of said waters to run into the so-called La Cueva Lakes during the irrigation season, hereby tentatively fixed as ending October 15th, except flood waters available for that purpose and except such flow as may inadvertently and unavoidably flow over the dam in said canal between the time that

the other water users than Defendants under said canal may discontinue using such water and turn it back into said canal, but said Defendants shall recapture said flow for direct irrigation as soon as possible. This modification of said Injunction shall continue until the further order of the court."

The hearing was had upon an amended petition and answer at the time fixed by the court, and after the modifying order above mentioned was entered. The court found as follows:

"2. That said Defendant, P. W. Shufeldt, did not, for a period of ten (10) days from and after the date of said Order and Injunction, to-wit: until April 19, 1934, permit the entire flow of said Mora River to pass through his diverting dam and down the bed of the Mora River, except a small quantity of seepage water or underflow.

"3. That after said ten (10) day period, to-wit: after April 19, 1934, and up to June 19, 1934, when a petition in contempt was filed herein, the Defendants did not permit half of the flow of said Mora River to flow down and pass the said diverting dam and said irrigation system of the Defendant, P. W. Shufeldt, but they diverted and used more than half of the flow of said Mora River.

"4. That said Defendant, P. W. Shufeldt, has not, since said Order and Injunction was served upon him on April 12, 1934, up to the time that the petition for contempt was filed in this cause, lowered his gates or made openings in said diverting dam or so altered the said diverting dam that the flow of said Mora River, or any part thereof, could pass down the bed of said stream, except a small quantity of seepage water or underflow not withheld by said dam.

"5. The Court finds that at diverse times since April 12, 1934, to-wit: on May 8, May 26 and June 4, 1934, and at other times, the Defendant, P. W. Shufeldt, diverted the entire flow of said Mora River through his said irrigation system, except a small quantity of seepage or leakage that naturally passed through his diverting dam or irrigation system.

"6. The Court finds that the Defendant, P. W. Shufeldt, did not, after April 19, 1934, and up to June 19, 1934, permit half of the flow of said Mora River to pass down to the water users below, either at the point of said diverting dam or at the sluice gate located in his diverting canal near the Old Mill.

"7. The Court further finds that there has been no modification made of said Injunction by the Court (except by Order of August 14, 1934, effective as of July 19, 1934) and that said Injunction of April 9, 1934, remained in full force and effect from April 9, 1934 to June 19, 1934, except that by the consent of the parties and approval of the Court, the Defendants were permitted to retain a small quantity of static water in their said canal that might be necessary for domestic purposes only, between April 12 and April 19, 1934,

but were not permitted to maintain a flow of water in said diverting canal during said period of time, as the Court herein finds was maintained."

Among other defenses the appellant contends that the order of July 19th modifying the original injunction was in effect an abrogation thereof and deprived the court of the power to punish him, though he had violated the injunction prior to the entry of the modifying order.

If the effect of the modifying order was to abrogate the original injunction, then appellant's position is correct.

The amendment of an order granting an injunction, which materially changes the rule of conduct prescribed in the original order, precludes punishment for civil contempt for the violation of the original order, whether such violation occurred before or after such amendment. Fremont v. Merced Mining Co., 9 Cal. 18, 19; State v. King, 47 La.Ann. 229, 16 So. 805; United States ex rel. McIntosh v. Price et al., 1 Alaska, 204; Peck **v.** Yorks, 32 How.Prac.(N.Y.) 408.

While the exact question has not been decided by this court, we stated in Canavan v. Canavan, 18 N.M. 640, 139 P. 154, 155, 51 L.R.A.(N.S.) 972, Ann Cas.1915D, 1007: "It is to be remembered that an injunction is a rule of conduct merely imposed, for the time being, upon a litigant by the properly constituted authority. But for the injunction the acts against which it is directed may be lawfully performed. If the litigant violates the injunction during its existence, he may be punished as for civil or criminal contempt, or both. But, if the injunction be dissolved, what was unlawful when it was in force, because prohibited by it, becomes lawful, and no basis remains upon which to predicate a proceeding in contempt. The principle runs through other branches of the law. For instance, if a statute prohibits the doing of any given act, the citizen may be punished for doing it so long as the statute remains in force. But if the statute be repealed, and the Legislature fails to provide that the statute shall remain in force as to all prior violations of the act, that which was unlawful has become lawful, and no prosecutions can be had. While the criminal in morals is still a criminal, in legal contemplation the law has released him from his criminality. Just so with injunctions. A person violating an injunction and thereby defrauding his adversary of the fruits of his cause of action is still guilty in morals, but in legal contemplation the law has discharged him of his offense."

But it is contended by appellees that even if a portion of the order as originally made was so modified by the court that it was no longer a basis for a contempt proceeding, yet there was sufficient of the original order embodied in the modifying order without change so that in effect the original order had not been abrogated to that extent; that both orders in effect required the appellant to permit one-half the water to flow down the channel of the river past appellant's irrigation project, and this was violated.

We have copied in the opinion the substance of each of these orders, and as we read the modifying order it changed every rule of conduct prescribed by the original order of injunction. We are satisfied that the original order (as the court found) was in force until modified by the order of July 19, but not thereafter. While the effect of each of the orders required that appellant allow one-half the normal flow of the river to pass down its channel for appellee's use, yet the rules of conduct required to accomplish this object in the respective orders were entirely different. In the first order the appellant was required to lower his gates or remove a portion of the dam for the purpose of allowing the water to flow down the channel of the river, and the injunction restrained him from diverting more than one-half the flow of the river at the dam; whereas the modifying order permitted the diversion of all the water at the dam, and ordered that one-half the flow of the river, "including flood waters to the extent theretofore used" by appellees, be returned into the channel of the river through the sluice gate at the mill; and that "defendants shall not be required during said time to open the diversion dam, etc."

The rules of conduct with reference to the handling of the water are entirely different in the respective orders. It is true, as appellee claims, that the principal object of the injuncion was to secure appellee's rights to the use of a portion of the water of the Mora river, and we agree that if each of the orders had merely enjoined appellant from diverting more than half the water, the original order would not have been abrogated but only restated in the modifying order; but such is not the case here. The original order was so changed by the modifying order that no distinct rule of conduct remained common to both.

It appearing, therefore, that the original order of injunction had been so modified that no distinct rule of conduct remained common to both, so that it could be said that such rule had not been abrogated, the contempt proceedings fell with the making of the modification order.

The cause will be remanded to the district court, with instructions to discharge the appellant.

It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.

## On Rehearing.

BRICE, Justice.

The questions raised on rehearing were determined in our original opinion, but some are reconsidered.

It is true that a number of courts have held that dismissal of an injunction proceeding or final disposition of a case without continuing the injunction in force does not prevent punishment for contempt for violations of the injunction while in force. Smith v. Reno, 6 How.Prac.(N.Y.) 124;

Crook et al. v. People, 16 Ill. 534; Shuler v. Raton Waterworks Co. (C.C.A.) 247 F. 634; State v. King, 29 Kan. 607; Wireless, etc., Co. v. Priess, 246 Mass. 274, 140 N.E. 793.

However, we do not feel disposed to overrule Canavan v. Canavan, 18 N.M. 640, 139 P. 154, 156, 51 L.R.A.(N.S.) 972, Ann.Cas.1915D, 1007, which holds to the contrary and is supported by Peck v. Yorks, 32 How.Prac.(N.Y.) 408; Taber v. Manhattan Ry. Co., 14 Misc. 189, 35 N.Y. S. 465, affirmed by New York Court of Appeals, 148 N.Y. 743, 42 N.E. 1093; Jones v. Jones, 75 Wash. 50, 134 P. 528; Moat v. Holbein, 2 Edw.Ch.(N.Y.) 188; and State v. Nathans et al., 49 S.C. 199, 27 S.E. 52.

But counsel contends that there was never a dissolution of the injunction. That, perhaps, depends upon the viewpoint. A law can be so amended as to entirely change the rule of conduct, and an injunctive order can be so modified that the same result will follow. We see no difference in that regard between an order dissolving an injunction and one modifying it so that the original rule of conduct is abrogated. In either case there is left no foundation for contempt proceedings.

We are not so much concerned in regard to the correctness of the conclusions of law reached in our original opinion as we are with regard to whether any definite part of the original injunction order was continued in the modification so that it could be a basis for contempt.

As we stated in the original opinion, both the order as originally made, and as modified, required that one-half the flow of the river be permitted to pass down to the appellees, and the means ordered to effectuate this in the respective orders were different. The original order and its modification were copied in our original opinion. Clearly the original order enjoined appellant from diverting more than one-half of the flow of the water of the Mora river by means of said La Cueva Irrigation System, or otherwise, and ordered that the water "shall be permitted to pass down the bed of said river at the location of said diverting dam *and not* be diverted and released in the sluice gate at the so-called 'old mill' on said property." Here the rule of conduct not only required that appellant divert no more than one-half the water flowing in the river, but it further provided what specific act should be done by appellant to cause the water to go down the river; that is, it must go through the dam and not be returned to the river at any other place.

While appellee argues that the administrative provisions in the injunction are not to be considered in determining whether it has been violated, we think this is not correct. Assume that appellant had permitted one-half the flow of the water under the original order to have gone into the river at the sluice gate; notwithstanding appellees would have received the water they were entitled to, yet it would have violated the injunction. Indeed, the injunction would have been violated had the

water been turned out of the ditch at any place except through the dam. No doubt counsel for appellees wrote the order of the court, as is customary, and made it unnecessarily oppressive, but nevertheless appellant was bound to obey it as made. The administrative feature complained of was a material part of the order, and must have been obeyed in order for appellant to have been safe from contempt proceedings.

Under the modified order appellant was required to turn the water down through the sluice gate, otherwise he would violate the order and be in contempt of court. The rule of conduct here, not only required that one-half of the water be not diverted, but that it should be turned into the river at a particular place. If the water had been turned in at any other place, the injunction would have been violated.

It should have been immaterial to appellees how the water was let into the river if it passed appellant's works. But they not only wanted an injunction to prevent the diversion of the water to which they were entitled, but wished it administered in a particular manner, more aggravating than useful.

As we see it, the administrative features of the order (original and as modified) were such a part of the rules of conduct, that although the water might have been turned into the river, yet appellant was subject to contempt unless it was done exactly as ordered. The original rule of conduct was so materially changed by the modifying order that it was abrogated.

People v. Rice, 144 N.Y. 249, 39 N.E. 88, cited by appellees, is not inconsistent with our holding. The Court of Appeals modified the order of mandate in an immaterial way but did not change the command to disregard the return filed by Mylod and issue the certificate of election, which was the object of the proceeding.

Cases involving criminal contempt have no application here. A different rule applies. State v. Nathans, supra.

This court, in Canavan v. Canavan, supra, quoted with approval the following from Peck v. Yorks, 32 How.Prac.(N.Y.) 408: "'An injunction, which is but an order of the court, can have no more force or extended operation after it is set aside or modified than a statute repealed or modified, in regard to acts previously done. In either case, the rule being abolished, the infraction of it is abolished also, and nothing remains on which a conviction can be based.'"

The motion for a rehearing is overruled.

SADLER, C. J., and HUDSPETH and BICKLEY, JJ., concur.

ZINN, J., did not participate.